75324. RYALS v. THE STATE.
(367 SE2d 309)

Banke, Presiding Judge.

Ryals appeals the denial of his motion for new trial following his conviction of burglary.

On the evening of the night the offense occurred, Ryals had visited the victim's home in the company of his wife and two young daughters, ostensibly to look for a wristwatch which he had lost on the premises while doing yard work for the victim earlier that day. With the victim's permission, and in his presence, the appellant and his family looked around the house but were unable to find the watch and subsequently left. The victim testified that before retiring that night, he locked the outside door of his home and latched the adjacent screen door. When he awoke in the morning, he discovered that his billfold containing $62 was missing from his trousers, which he had left hanging from a chair next to his bed. He also discovered that the screen door had been slit in the area of the latch.

The victim immediately reported the theft to the police; and, based on his assertion that no visitors other than the Ryals family had been present at his house the previous evening, the police obtained a warrant to search the family's mobile home. While the officers were en route to the home to execute the warrant, they observed Ryals and his wife walking alongside the road and placed both of them in the back seat of the patrol car. They then proceeded to the mobile home to execute the search warrant. Although the ensuing 45-minute search uncovered no evidence connecting Ryals to the burglary, both Ryals and his wife were nevertheless taken to the police station, where, at 11:55 a.m., the appellant signed a written waiver of his *Miranda* rights. A lengthy interrogation session followed, terminating at approximately 5:00 p.m. with the appellant's placement of his signature on the following written statement: "I went at 2:00 to Mr. Harrisons (sic) house and went in and took a billfold with $62 and left there and went home. I unlatched the screen door and opened the wood door. It wasn't locked." Following a *Jackson v. Denno* hearing, the trial court admitted this statement over Ryals' objection that it had not been voluntarily made. See generally OCGA § 24-3-50. *Held*:

1. The appellant contends that "[t]he trial (sic) committed reversible error by finding that [his] alleged confession was freely and voluntarily given." While this enumeration of error is couched solely in Fifth Amendment terms, the appellant additionally argues in his brief that the police violated his "State and Federal Constitutional Rights" by holding him in custody and making it clear to him "that [he] was not going to be allowed to leave the police station until such time as they received a confession from him as to his guilt in this case." We hold that this argument is sufficient to raise the contention that the confession was extracted in violation of the appellant's due process rights under the Fourth as well as the Fifth Amendment.

Pursuant to the Appellate Practice Act of 1965, which comprehensively and exhaustively revised and modernized appellate procedure in Georgia, enumerations of error are to be reviewed in such a manner "as to bring about a decision on the merits of every case appealed and to avoid dismissal of any [appeal] *or refusal to consider any points raised therein*, except as may be specifically [authorized by the Act.]" OCGA § 5-6-30. (Emphasis supplied.) "Where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from or what errors are sought to be asserted upon appeal, the appeal shall be considered in accordance therewith notwithstanding that the notice of appeal fails to specify definitely the judgment appealed from or that the enumeration of errors fails to enumerate clearly the errors sought to be reviewed." OCGA § 5-6-48 (f).

In conformance with the letter and spirit of the Appellate Practice Act, we conclude that the appellant's constitutional challenge to the admissibility of his custodial statement is properly before us, notwithstanding his lack of precision in specifying the precise source of the constitutional right which he contends has been violated.

2. It is apparent that the appellant's statement was obtained as the product of an arrest made without probable cause. In a case with remarkably similar facts, the United State Supreme Court, in *Dunaway v. New York*, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979), held that a defendant's due process rights were violated by just such an in-custody interrogation conducted pursuant to an unlawful arrest, notwithstanding the defendant's purported voluntary waiver of his *Miranda* rights following the arrest. Accord *State v. Harris*, 256 Ga. 24 (343 SE2d 483) (1986). In the present case, as in *Dunaway*, supra, there was clearly no probable cause for the appellant's arrest, and "[n]o intervening events broke the connection between [his] illegal detention and his confession. To admit [appellant's] confession in such a case would allow 'law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they

could wash their hands in the "procedural safeguards" of the Fifth.' " *Dunaway*, supra, 442 U. S. at 219, citing Comment, 25 Emory LJ. 227, 238 (1976). The fact that a confession may be voluntary for purposes of the Fifth Amendment is merely a threshold requirement for Fourth Amendment analysis. *Dunaway*, supra, 442 U. S. at 217. Accordingly, even assuming arguendo that the evidence would otherwise support a conclusion that the appellant's confession was voluntary, we conclude that it should have been excluded from evidence as the fruit of an unlawful arrest.

3. Without the appellant's in-custody statement, there was insufficient evidence to sustain a conviction. It follows that the appellant's motion for a directed verdict of acquittal should have been granted.

*Judgment reversed. Sognier and Benham, JJ., concur. Birdsong, C. J., concurs specially. Pope, J., concurs and also concurs specially. Beasley, J., concurs in part and dissents in part. Deen, P. J., and Carley, J., dissent. McMurray, P. J., dissents as to the judgment of reversal.*

BIRDSONG, Chief Judge, concurring specially.

I concur specially with the majority opinion for two reasons: (1) This court can consider error not enumerated in exceptional cases where no exception is taken, if the error is obvious, and seriously affects the fairness, integrity or public reputation or judicial proceedings, and (2) this is a Fourth Amendment error, based upon egregious police conduct, which should not be condoned by the judicial system.

(1) "The United States Supreme Court has stated the general rule many times: ' "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U. S. 157, 160.' *Silber v. United States*, 370 U. S. 717, 718 (82 SC 1287, 8 LE2d 798); accord *Rogers v. United States*, 422 U. S. 35, 41 (95 SC 2091, 45 LE2d 1); *Lamb v. Cramer*, 285 U. S. 217, 222 (52 SC 315, 76 LE 715); *United States v. Tenn. &c. R. Co.*, 176 U. S. 242 (20 SC 370, 44 LE 452)." *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482). The error is obvious and it seriously affects the fairness, integrity and public reputation of judicial proceedings. This court is authorized to consider the error. *Kearney v. State*, 184 Ga. App. 64, 66 (360 SE2d 633).

(2) The U. S. Supreme Court, in *Brown v. Illinois*, 422 U. S. 590 (95 SC 2254, 45 LE2d 416), considered the admissibility of a suspect's statement following his detention, without probable cause, and held that the warnings required by the *Miranda* decision in no way inform a person of his Fourth Amendment rights, including his right to be

released from unlawful custody following an arrest made without a warrant or without probable cause. Id. at 601. In the instant appeal, there was only a *search* warrant, not an *arrest* warrant — and for good reason as there was no probable cause to arrest. Although Ryals was detained at the police station for approximately seven hours and warned of his *Miranda* rights, *Miranda* warnings alone cannot make a suspect's statement following an illegal arrest a product of free will, and serve to break the causal connection between the illegal arrest and the confession. Id. at 603. The question whether a confession made after an illegal arrest is the product of a free will must be answered on the facts of each case, and no single fact is dispositive; in determining whether a confession is obtained by exploitation of an illegal arrest, the giving of the warnings required by the *Miranda* decision, the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant. Id. And, even if the trial court finds the confession voluntary under the Fifth Amendment, the Fourth Amendment issue remains.

The Supreme Court again, in *Dunaway v. New York*, 442 U. S. 200 (99 SC 2248, 60 LE2d 824), found that "[t]he Rochester police violated the Fourth and Fourteenth Amendments, when, without probable cause to arrest, they seized petitioner and transported him to the police station for interrogation," as in the instant appeal. The suspect was "seized" within the meaning of the Fourth Amendment, "when he was taken involuntarily to the police station" if the police lacked probable cause to arrest. It was held that "detention" for custodial interrogation, regardless of its label, intrudes so severely on the interests protected by the Fourth Amendment, as to invoke the traditional safeguards against illegal arrest. Id. "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' " *Davis v. Mississippi*, 349 U. S. 721, 726 (89 SC 1394, 22 LE2d 676).

*Brown*, supra, settled the argument that " 'Miranda warnings . . . do not alone sufficiently deter a Fourth Amendment violation. . . . Consequently, although a confession after proper Miranda warnings may be found "voluntary" for purposes of the Fifth Amendment, this type of "voluntariness" is "merely a threshold requirement" for Fourth Amendment analysis. . . .' " *Dunaway*, supra at 217. Appellate courts focus upon " 'the causal connection between the illegality and the confession'. . . . When there is a close causal connection between the illegal seizure [of the person] and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but use of the evidence is more likely to compromise the integrity of the courts." Id. at 217-218. "And the bur-

den of showing admissibility rests, of course, on the prosecution." Id.

I have found no event of any significance to establish attentuation of the primary illegality. To the contrary, there are many elements establishing exacerbation of the primary taint — the illegal arrest: (1) The illegal detention continued over a period of almost seven hours. (2) The police also held the suspect's wife in detention for that same period. (3) The police refused to permit the suspect or his wife to care for their children during the detention period, although they were out of school during the latter part. (4) Neither the suspect nor his wife were fed the noon meal, although one officer said he purchased them a coke and a package of crackers out of his own pocket. (We will only note in passing: (a) This was a snack and not a meal, and (b) it was personal action of the individual and not the official act of the State.) (5) Water was not furnished to either the suspect or his wife during the detention period, although the police said a water fountain was available. (Here we will note that the availability of water elsewhere in the building from where a suspect is being detained and questioned is not "making available" a suspect's minimal needs of sustenance.) The suspect stated that he was permitted to visit the water fountain once during the seven hours. (6) The suspect stated that he was denied rest room facilities, and this allegation was not refuted. (7) The police admitted that custody of the suspect's children was discussed with him in the context that they would be placed in the custody of the Department of Family and Children's Services, if both the suspect and his wife were confined.

One cannot but conclude from the totality of the evidence that the police intended to detain the suspect for an indefinite period, and at least until he talked to them. Moreover, the suspect agreed to make a statement only after approximately seven hours of detention of himself and his wife, only after he was unable to make satisfactory arrangements for care of his children, only after custody of the children was discussed with the police, and only after the suspect agreed to make a statement provided his wife would be released. This court should not countenance illegal arrest, unlawful detention of the suspect and his wife, and the prolonged and coercive nature of the tactics used by the police, while denying him minimal sustenance and rest room privileges, so as to extract a statement obviously in violation of *Brown*, supra, *Dunaway*, supra, and *Davis*, supra.

Accordingly, I would find that we should consider the obvious constitutional error, and that such error requires reversal, unless this court desires to sanction illegal arrest, unlawful detention, and obvious and prolonged police tactics to coerce a suspect into making a statement.

I am authorized to state that Judge Pope joins in this special concurrence.

BEASLEY, Judge, concurring in part and dissenting in part.

1. I concur in the conclusion of inadmissibility because it is clear from the record, as a matter of law, that the trial court erred in finding that the alleged confession was voluntary. That is the issue that was raised below and the ruling that is urged as error here. Deciding it does not require second-guessing defendant's counsel by sua sponte raising other issues and rendering decisions as to them.

During the course of the trial, when a police officer began to testify about defendant's custodial statement, defendant moved "for a Jackson-Denno hearing," thus invoking his federal constitutional right to the "due process" procedure set out in *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964) to assure that his Fifth and Fourteenth Amendments right against compelled self-incrimination was not violated by the introduction of the confession. The Court in *Jackson* recognized: "The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions." Id. at 391. He argued, after the evidence was presented out of the presence of the jury, that it showed that the statement was not voluntarily made, "absolutely not." The court disagreed and found, to the legal degree necessary as a threshold matter to allow the jury to consider it, that it was voluntary. And so, despite defendant's urging that it was not voluntary and should not be put before the jury, it was admitted.

Defendant again challenged the court's ruling, in the motion for new trial, still insisting that the alleged confession was not voluntary. The court, however, denied the motion.

On appeal, defendant enumerates as error the court's finding of voluntariness. He argues that the evidence from the *Jackson-Denno* hearing which is not disputed shows that the court could not find that the statement was voluntary. While he does not expressly recite that what he stands on is the right against compelled self-incrimination in state courts which is protected by the Fifth and Fourteenth Amendments, it is patent that this is his ground.[1] He is simply repeating what he claimed below. He does, of course, in addition cite and rely in this court on the Georgia statute on the subject, OCGA § 24-3-50.

The trial court erred in its finding of voluntariness, reaching this

---

[1] "The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement — the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own free will, and to suffer no penalty, as held in *Twining* [*v. New Jersey*, 211 U. S. 78], for such silence." *Malloy v. Hogan*, 378 U. S. 1, 8 (84 SC 1489, 12 LE2d 653) (1964). See *Miranda v. Arizona*, 384 U. S. 436, 463 (86 SC 1602, 16 LE2d 694) (1966).

result because the judge did not believe defendant's version, which differed only in some respects from that given by the investigating officer and the police chief. However, the uncontested objective facts did not give berth to such a finding. The other special concurrence ably lists some of them.

Some deserve elaboration. The warrantless arrest of both defendant and his wife, while they were walking along the railroad track towards town that morning was itself a circumstance to be considered in determining voluntariness because it set the abrupt and power-exhibiting tone of the long detention. This was exacerbated by the thorough search of their trailer home which took place with defendant and his wife in police custody there, before they were taken to the police station.

Another fact contributing to coercion as opposed to voluntariness is that they were detained at the police station, except when taken in mid-afternoon to another city for a polygraph test instigated by the police chief, for over six hours. So, too, is the fact that defendant's mother had gone off to get an attorney after talking with defendant, his wife, and the police chief, yet the questioning continued, the attorney was not available, and sometime later the alleged confession was obtained.

The burden was on the State to prove that the confession was voluntary, not on defendant to prove it was involuntary. *Lego v. Twomey*, 404 U. S. 477 (92 SC 619, 30 LE2d 618) (1972). For applications of this rule, see *Jones v. State*, 245 Ga. 592, 598 (8) (266 SE2d 201) (1980); *State v. Osborne*, 174 Ga. App. 521 (330 SE2d 447) (1985). The trial court's finding was clearly erroneous, as it was counter to a preponderance of the evidence, and I agree that the alleged confession should have been excluded.

2. That is not to say that the motion for directed verdict should have been granted. It was denied because the alleged confession was in evidence, albeit we have found that it was erroneously admitted. We cannot go back, exclude the alleged confession, and on the basis of the remaining evidence substitute our judgment for the trial court's. The state is entitled to retry the case without the inadmissible evidence. Defendant is entitled to a new trial, as prayed for in his motion for new trial based on the ground here discussed.

CARLEY, Judge, dissenting.

The majority first holds that appellant's confession "should have been excluded from evidence as the fruit of an unlawful arrest." (Majority opinion, page 459.) The majority then holds that, absent the confession, the evidence would not be sufficient to authorize appellant's conviction. In so doing, the majority acts in excess of its jurisdiction. Whether or not appellant's confession was the fruit of an ar-

rest which was unsupported by probable cause has heretofore never been raised as an issue in this case. Accordingly, that issue is not one which this court is now authorized to consider and to rule upon. When consideration is limited to only those issues in this case which are properly before this court, appellant's conviction must be affirmed.

Accordingly, I must dissent.

Appellant never filed a pre-trial motion wherein he asserted the underlying illegality of his arrest under the Fourth Amendment and sought the suppression of his confession as the fruit thereof. Appellant only sought, during the course of the trial, a *Jackson v. Denno* hearing to determine the *voluntariness* of his confession. Accordingly, only a ruling by the trial court as to a violation of appellant's Fifth Amendment rights was invoked. "We view the purpose of a *Jackson-Denno* hearing and the requirement for the giving of *Miranda* warnings, as one allowing the trial court in the first instance, as a matter of law, and the jury, ultimately, as a matter of fact, to assure themselves of the voluntariness of a statement made by an individual and offered as a truthful but inculpatory admission against interest, and thus not violative of the *constitutional prohibition of involuntary self-incrimination*." (Emphasis supplied.) *Farley v. State*, 145 Ga. App. 98, 100 (1) (243 SE2d 322) (1978). Thus, the trial court has never had occasion to consider the Fourth Amendment issue that is addressed by the majority. As appellant had requested, the trial court simply conducted a *Jackson v. Denno* hearing and, after giving proper consideration to the totality of those circumstances which surrounded the subsequent confession rather than those which surrounded the initial arrest, found that appellant had voluntarily given his inculpatory statement to the officers. See generally *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). It is only this Fifth Amendment issue of the voluntariness of appellant's confession that is before this Court, not the Fourth Amendment issue of the probable cause for appellant's arrest that is addressed by the majority.

Apparently unlike the majority, appellant himself recognizes that the underlying lawfulness of his arrest is not, and cannot be, a viable issue on this appeal. The admission of the confession is *not* enumerated as error on the ground that it was the product of appellant's unlawful arrest. Appellant enumerates as error only the trial court's finding that the "alleged confession was freely and voluntarily given." The majority simply ignores this enumeration of error, choosing instead to exceed its jurisdiction to hold that appellant's confession was erroneously admitted for a totally unenumerated reason which has never been raised in or ruled on by the trial court. " 'The Court of Appeals has jurisdiction for the trial and correction of errors of law. . . . ([Cit.]) The Appellate Practice Act of 1965 ([OCGA § 5-6-

40]) provides that the appellant shall file with the Clerk of the Court of Appeals "an enumeration of the errors, which shall set out separately each error relied upon." . . . We do not know of any law or rule of practice and procedure that authorizes the Court of Appeals . . . to examine the entire record and grant a new trial upon a ground of [its] own making and not upon a ground specified by the appellant. *The duty of the appellate court is to correct errors alleged to have been made in the trial court and not to manufacture them.*' [Cit.] *Thus we can not consider any error alleged to have been made unless there is an enumeration of it as provided in [OCGA § 5-6-40], nor can we consider and reverse on an error enumerated unless it is supported in the record and shown to have been ruled on by the trial judge.*" (Emphasis supplied.) *Craig v. State*, 130 Ga. App. 689, 692-693 (6) (204 SE2d 307) (1974). Although under Rule 35 (b) of the Rules of this Court, *Craig*, in and of itself is a physical precedent only, the authorities cited therein remain quite viable. Moreover, *Craig* was cited with approval in a 1983 case of this Court which likewise held that "the issue underlying this enumeration, not being raised at trial, cannot be considered on appeal. [Cit.]" *Kent v. Hunt & Assoc.*, 165 Ga. App. 169, 171 (7) (299 SE2d 123) (1983).

The statement in the majority opinion that appellant himself urges a Fourth Amendment violation is simply the majority's own erroneous interpretation of the Fifth Amendment argument that is advanced in appellant's brief in legitimate support of his enumeration of error. However, even if the majority were correct in its interpretation of the nature of appellant's argument, appellant's brief would not provide this court with the jurisdiction needed to address the Fourth Amendment issue. Appellant's failure to raise a Fourth Amendment issue in the trial court or to enumerate any error as to such an issue on appeal serves to preclude this court from addressing the merits of any argument made in his brief as to that issue. See generally *Craig v. State*, supra. "An enumeration of error cannot be enlarged to include *other issues not made therein.* [Cit.]" (Emphasis supplied.) *Reese v. State*, 139 Ga. App. 630, 631-632 (3) (229 SE2d 111) (1976). This court will "not reach the matter raised in [appellant's] brief . . . [if] the issue was not enumerated as error." (Emphasis supplied.) *Irvin v. Askew*, 241 Ga. 565, 566 (2) (246 SE2d 682) (1978).

It is unclear what part of the record the majority relies upon for the recited facts supporting its finding of the lack of probable cause for appellant's arrest. Presumably, the majority relies upon the evidence which was adduced at the *Jackson v. Denno* hearing. However, since the *Jackson v. Denno* hearing involved *only* the Fifth Amendment voluntariness of appellant's subsequent confession, the State was never required to introduce any evidence as to the Fourth Amendment probable cause for appellant's initial arrest. Accordingly,

it should not be surprising that the majority finds a lack of evidentiary support for the existence of probable cause for appellant's arrest. The majority, in effect, finds reversible error because the State failed to produce evidence as to an issue which was *never raised* in the trial court and because the trial court failed to exclude appellant's confession for a reason *which was never presented* to that court. The evidence which was produced at the *Jackson v. Denno* hearing, although conflicting, clearly authorized the trial court, acting as the trier of fact, to find that appellant's confession had been freely and voluntarily given. "The trial court's determination that [appellant's] confession was voluntary and therefore admissible for the jury's consideration was supported by a preponderance of the evidence . . . and was not error." *Thomas v. State*, 233 Ga. 237, 240 (2) (210 SE2d 675) (1974). When proper consideration is given to all of the admissible evidence, including appellant's confession, the trial court did not err in denying appellant's motion for a directed verdict of acquittal. " 'A confession of guilt, freely and voluntarily made by the accused, is direct evidence of the highest character and sufficient to authorize a conviction when corroborated by proof of the corpus delicti. [Cits.]' [Cit.]" *Fields v. State*, 232 Ga. 723 (2) (208 SE2d 822) (1974). I would affirm the conviction and, therefore, I dissent.

I am authorized to state that Presiding Judge Deen joins in this dissent.

DECIDED MARCH 18, 1988.

*John R. Thigpen, Sr.*, for appellant.
*Harry D. Dixon, Jr., District Attorney, Margaret M. Edwards, Assistant District Attorney*, for appellee.