A98A1885. THE STATE v. GUILLORY.
(511 SE2d 591)

BEASLEY, Presiding Judge.

Joseph Guillory was indicted for false public alarm (OCGA § 16-10-28). OCGA § 5-7-1 (a) (4) permits the State's appeal of the order granting Guillory's motion to suppress his confession.

The evidence at the suppression hearing showed that at approximately 12:45 a.m. on October 1, 1997, Alicia Rankine received a telephone call in her dorm room at McAllister Residence Hall at Brewton-Parker College. The caller did not identify himself but told her there was a bomb in the building. Authorities were contacted.

GBI Agent Watson arrived on the scene at about 2:30 a.m. after the dormitory had been evacuated. Rankine, Sheriff Sanders and Brewton-Parker security officer Cleve Royal told Watson the details of the bomb threat. Rankine told Watson that she knew only one male student at Brewton-Parker whom she had known prior to college, and that she knew him as "J. C." She said he lived in the "200 dormitory" of LeRoy Hall and she had not had any problems with him. Rankine explained that she knew from the sequence of the rings that the telephone call was an on-campus call. But she told Watson

that it was not "J. C." who made the threat on the phone.

Royal told Watson that during the evacuation of McAllister Hall, he observed a man wearing blue shorts and a white shirt alone in the area of a nearby male dorm, LeRoy Hall. When Royal shined his flashlight, the man ran into the dorm.

While McAllister Hall was being searched for a bomb, Watson and Sanders went to LeRoy Hall to see if they could locate anyone matching the description given by Royal. The two men entered the main door to the 200 block of LeRoy Hall which was open; the doors to the four individual dorm rooms were on the interior of the building. Watson saw that the door to room 202 was ajar by about two to four inches and he knocked on that door, but not on the other three. Although there was no answer, he heard sound from a television. He continued to "beat" on the door and announce who he was but there was no response. He peeked into the room, saw two men inside each lying on a bed, and opened the door. He let himself in the room and called out to the sleeping men.

The defendant identified himself and Watson said he would like to talk to him. Guillory stood up and put on dark colored shorts and a white tee shirt. Watson testified that he asked Guillory "what he had been doing" and that Guillory said he had been "playing" on the telephone. Guillory testified that this conversation occurred at the police station. There was some other discussion during which Watson visually examined the room. At some point during the encounter, Guillory was arrested and handcuffed. Sheriff Sanders took him by car to the sheriff's department. No *Miranda* warnings were given to Guillory in the dorm room or before he got to the sheriff's department.

When Watson arrived at the Sheriff's department at about 4:15 a.m., he joined Guillory in an office where he was being detained and had a brief conversation with him. Guillory testified that Watson asked if he had been "playing" on the phone that night. Guillory said "yes" and told how he had called his girlfriend, Sheree Smith, and pretended to do a routine from the movie "Scream" to scare her. Watson testified that this statement was Guillory's explanation of his earlier comment about playing on the telephone. Watson then left the office to contact Smith about the story. Sanders, who had come into the office at some point, stayed with Guillory. Guillory testified that Sanders told him he should go ahead and confess and get it over with so he could go on about his business and get back to school. Watson came back into the office and Sanders told him that Guillory wanted to tell what had happened.

Watson testified that he then advised Guillory of his *Miranda* rights, and Guillory signed the waiver of rights form and a written confession in which he admitted making the bomb threat. Guillory testified that he signed a waiver only after Watson got him to sign

the confession. Sanders testified he was not in the room when the rights were given.

The trial court ruled that whether *Miranda* warnings were given before or after Guillory signed a confession was irrelevant and did not make a finding on that factual issue. The court found instead that Guillory was under arrest at the time he was first questioned in the dormitory and that he began to incriminate himself then. The court concluded that therefore the subsequent statement must be excluded. It did not base its decision on the possible illegality of the arrest.

The trial court's "findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it," and "the trial court's decision with regard to questions of fact and credibility . . . must be accepted unless clearly erroneous."[1] In essence the court construed the facts against Guillory and still ruled as a matter of law that the confession was not admissible.

The evidence regarding Watson's entry into Guillory's room and the subsequent arrest is not in dispute, and "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review."[2] Guillory argued that the arrest was illegal in his motion to suppress. Although the issue was not resolved, the pleadings and motion hearing show the matter was thoroughly aired and presented to the court.

The State argues that Guillory was given *Miranda* warnings before the verbal and written confessions, and even if the statements made at the dormitory room were incriminating, the later confessions must be examined separately and were properly taken. It cites *Reinhardt v. State*,[3] *Andrews v. State*,[4] and *Moore v. State*.[5]

1. We affirm but on different grounds. "The fact that a confession may be voluntary for purposes of the Fifth Amendment is merely a threshold requirement for Fourth Amendment analysis."[6] In other words, assurance that a person's Fifth Amendment right against compelled self-incrimination was not violated does not necessarily overcome a failure to protect the person's right under the Fourth Amendment against unreasonable search and seizure. For the following reasons we hold that even if Guillory's confession was voluntary,

---

[1] (Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[2] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[3] 263 Ga. 113 (428 SE2d 333) (1993).

[4] 222 Ga. App. 129 (473 SE2d 247) (1996).

[5] 263 Ga. 11 (427 SE2d 766) (1993).

[6] *Ryals v. State*, 186 Ga. App. 457, 459 (2) (367 SE2d 309) (1988).

it materialized from an illegal arrest and must be excluded.

"An arrest for a crime may be made by a law enforcement officer either under a warrant or without a warrant if the offense is committed in such officer's presence or within such officer's immediate knowledge; if the offender is endeavoring to escape; . . . or for other cause if there is likely to be failure of justice for want of a judicial officer to issue a warrant."[7] "The Supreme Court of the United States has held that, even where probable cause exists, intrusion of a person's home without a warrant is prohibited by the Fourth Amendment unless such intrusion is preceded by consent or exigent circumstances. *Steagald v. United States*, 451 U. S. 204, 211 (III) (101 SC 1642, 68 LE2d 38) (1981)."[8]

Guillory was arrested without a warrant. None of the statutory exceptions to the warrant requirement apply. No crime was committed in Watson's presence or within his immediate knowledge. Guillory was not attempting to flee his dormitory. Assuming Watson could establish probable cause, no reason has been given as to why Watson could not have obtained a warrant before arresting Guillory. There is no suggestion that Guillory consented to Watson's entry into the room, nor were there exigent circumstances.

"[A]n exigent circumstance which does justify the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation."[9] Watson testified he went to LeRoy Hall to interview Guillory to determine if he had been involved in the incident. Watson acknowledged that he did not believe there was a bomb in Guillory's room and that he did not search for one there. He offered no other explanation of exigency for entering Guillory's dormitory room.

Even if Watson had sought a warrant before arresting Guillory, "[a] valid arrest must be supported by probable cause. *Dunaway v. New York*, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979). An arrest unsupported by probable cause and made solely for the purpose of investigating a crime in the hope that something will turn up as a result of the ensuing investigation, intrudes so severely on the interest protected by the Fourth Amendment that exclusion of the statement is mandated. *Dunaway*, supra; *Brown v. Illinois*, 422 U. S. 590 (95 SC 2254, 45 LE2d 416) (1975). If there is a causal connection between an illegal arrest and a custodial statement of confession, then the exclusionary rule must be applied to ensure compliance with the Fourth Amendment. *Dunaway*, supra; *Brown*, supra; *Wong*

---

[7] OCGA § 17-4-20.

[8] *Cates v. State*, 232 Ga. App. 262, 264 (501 SE2d 262) (1998).

[9] *Coker v. State*, 164 Ga. App. 493, 496 (5) (297 SE2d 68) (1982).

*Sun v. United States,* 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963)."[10] This is so even if a subsequent confession is voluntary.[11]

It is undisputed that Watson and Sanders did not have probable cause to arrest Guillory nor authority to enter his dormitory room. Watson conceded he did not have enough information for probable cause to acquire a warrant before he stepped in. This is consistent with all of his testimony. Prior to entry, Watson only knew the following: (1) a bomb threat had been made by an unidentified caller; (2) the person who received the bomb threat knew one male student from her home town, she knew his name was "J. C." and she knew he lived in LeRoy Hall; (3) she stated that J. C. had never caused her trouble and, more importantly, he was not the person on the phone who made the threat; (4) a man wearing blue shorts and a white shirt was seen standing near LeRoy Hall observing McAllister Hall being evacuated, and he ran into LeRoy Hall when a light was shone on him.

What Watson did *not* know shows the prematurity of the entry. Watson did not have any reason to believe the man seen by Royal was J. C. He was not given a description of J. C. He did not know what J. C. had been wearing that day. The only witness to the crime said it was not J. C. who made the call. Watson did not explain any relevance of the fact that Rankine knew J. C. prior to going to college. He did not know that it was J. C.'s room where the door was slightly ajar. He did not know that either person he saw in J. C.'s room was either J. C. or the person Royal saw flee into the dorm. Royal was not there to make the identification. Watson made no effort to determine which room was J. C.'s. These unknowns leave the known facts as insufficient "to warrant a prudent man in believing that [Guillory] had committed or was committing an offense."[12] "[A] suspicion or strong reason to suspect is an insufficient foundation for a finding of probable cause."[13]

2. To determine whether the confession is a product of the illegal arrest, "[t]he trial court must determine whether the statements sought to be excluded were obtained by exploitation of the illegality of defendant's arrest. *Thompson v. State,* 248 Ga. 343, 344 (2) (285 SE2d 685) (1981). In addition to whether a detainee has been warned of his rights, the factors which should be considered in determining

---

[10] *State v. Stringer,* 258 Ga. 605 (372 SE2d 426) (1988).

[11] *Taylor v. Alabama,* 457 U. S. 687, 693 (102 SC 2664, 73 LE2d 314) (1982).

[12] (Citations and punctuation omitted.) *Manzione v. State,* 194 Ga. App. 227, 229 (390 SE2d 121) (1990); *Johnson v. State,* 258 Ga. 506, 507 (2) (371 SE2d 396) (1988) (arresting officer must have "probable cause to believe the accused has committed or is committing an offense"). Compare *Gray v. State,* 207 Ga. App. 648, 649-652 (2) (428 SE2d 663) (1993).

[13] (Citations and punctuation omitted.) *State v. King,* 191 Ga. App. 706, 708 (382 SE2d 613) (1989).

whether a confession has been purged of the taint of an illegal arrest include the temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct. (Cits.) *Taylor v. Alabama*, 457 U. S. 687, 690 (II) (102 SC 2664, 73 LE2d 314) (1982)."[14]

Guillory's confession occurred within one and one-half hours of his arrest and there were no intervening circumstances alleviating the taint of the improper arrest. In fact, according to Watson, Guillory's statements made in his room during the arrest led to further questioning at the Sheriff's department which resulted in the confession drafted by Watson and signed by Guillory.[15]

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 4, 1999.

*Timothy G. Vaughn, District Attorney, Karen J. Rice, Assistant District Attorney*, for appellant.

*John E. Morrison*, for appellee.

---

[14] (Punctuation omitted.) *Paradise v. State*, 212 Ga. App. 166-167 (1) (441 SE2d 497) (1994).

[15] Compare *Paradise v. State*, supra (evidence supports conclusion defendant's confession was not a product of illegal arrest prior to his confession).