A91A1207. MERRIMAN v. THE STATE.
(412 SE2d 598)

BEASLEY, Judge.

Defendant appeals his conviction of trafficking in marijuana, OCGA § 16-13-31 (c). He enumerates as error the denial of his motion to suppress evidence which he contends was illegally obtained, OCGA § 17-5-30, and the failure to fully grant his motion for independent examination and analysis of alleged contraband substances.

1. " 'On appeal of the denial of a motion to suppress(,) the evidence is to be construed most favorably to the upholding of the findings and judgment made.' . . . The trial court's findings must be adopted unless determined to be clearly erroneous." *Dennis v. State*, 166 Ga. App. 715, 716 (305 SE2d 443) (1983). See also *Johnson v. State*, 233 Ga. 58 (209 SE2d 629) (1974); *State v. Medders*, 153 Ga. App. 680, 681 (266 SE2d 331) (1980). The evidence presented to the trial court at the hearing, supportive of the facts as found by the court, showed the following.

Based upon an anonymous telephone tip that marijuana was growing in defendant's backyard, two deputy sheriffs and a GBI agent proceeded to his residence. There they found the yard enclosed partly by a high brick wall and partly by a wooden fence about eight feet high. Unable to view anything from the portion protected by the

brick wall, the three officers moved through a heavily wooded area in the back to the wood fence. There they looked through cracks in the fence into the backyard and saw marijuana plants growing. The officers began to return to their automobile through the woods when one of them saw a light-haired person above the fence, who ducked down as he glanced. They then ran.

The officers conferred among themselves and with their superior by phone. They determined that, because they had been seen by a person at the house, evidence inside the house such as more marijuana, money, records, and ledgers, might be destroyed before they could obtain a search warrant. After calling for and obtaining back-up, they proceeded to the house. Defendant's wife, who looked like the person the officers had seen earlier, answered the door knock and, in response to a question, said she lived there. When she indicated she needed to quiet her dogs, they followed her into the living room and arrested her on a charge of manufacturing marijuana. Upon entry, one of the officers smelled what he perceived to be burning marijuana. Once inside they observed a burning marijuana cigarette and green leafy material in a plastic bag. After the arrest, which was occasioned by the backyard marijuana, the officers conducted a search of the house, during which time defendant's wife signed a consent form. They later obtained a search warrant.

When defendant arrived home, he was arrested for manufacturing marijuana, and subsequently charged with trafficking in it. He contends that all the marijuana found in his house as well as the growing plants in his yard was illegally seized in violation of the Fourth Amendment of the United States Constitution and the Georgia Constitution and laws.

We consider only whether the arrest and search were legal under federal constitutional law because defendant has not otherwise separately articulated state law on appeal. An independent issue has not been adequately presented. *Bonds v. State*, 188 Ga. App. 135 (372 SE2d 448) (1988). Going back a bit, defendant in his motion only referred to the state constitution in general, and the trial court did not rule on its application. In order to obtain review, appellant must raise the ground below and obtain a ruling on it. *Hoover v. State*, 198 Ga. App. 481, 482 (3) (402 SE2d 92) (1991); *Bailey v. State*, 198 Ga. App. 632 (1) (402 SE2d 363) (1991).

"[A] police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point." *State v. Aultman*, 160 Ga. App. 550, 551 (287 SE2d 580) (1981). Accord *State v. Zackery*, 193 Ga. App. 319 (387 SE2d 606) (1989).

The evidence is unclear exactly where the boundary of defend-

ant's land was, in relation to where the officers were when they peered through the wooden fence. Defendant and his wife testified that the fence was approximately one-and-one-half to two feet inside the boundary line but there was no documentary or disinterested evidence to confirm their self-serving statements that their property extended beyond the fence. The trial court found that the point of the officers' observation "was not precisely established by the evidence." The court found that they were either on or within one foot of the line separating defendant's property from that of adjoining land. There was no finding that the officers had transgressed onto defendant's property. Credibility and weight are matters for the factfinder, who could reject the occupants' testimony as to property line. *Woodruff v. State*, 233 Ga. 840, 844 (3) (213 SE2d 689) (1975); *Ward v. State*, 193 Ga. App. 137, 138 (1) (387 SE2d 150) (1989).

"Plain view" as used by the Georgia courts should not be confused with the "plain view doctrine" as described in *Coolidge v. New Hampshire*, 403 U. S. 443, 464 (91 SC 2022, 29 LE2d 564) (1971). "Open view" is a better term to describe the non-intrusional visual observation from a vantage point outside a constitutionally protected area. The "plain view doctrine" of *Coolidge* "refers exclusively to the legal justification — the reasonableness — for the seizure of evidence which has not been particularly described in a warrant and which is inadvertently spotted in the course of a constitutional search already in progress or in the course of an otherwise justifiable intrusion into a constitutionally protected area." *Brown v. State*, 292 A2d 762, 775 (Md. 1972). It involves first whether there was a valid intrusion into a constitutionally protected area; then whether the discovery was inadvertent. Because an "open view" encompasses that which is readily observable or clearly visible from an observation point which is not within a constitutionally protected confine, this sighting of evidence needs no further justification for a seizure. *Brown*, supra at 774. Contrary to appellant's assertion, "plain view" does not require inadvertence. *Horton v. California*, ___ U. S. ___ (110 SC 2301, 110 LE2d 112) (1990).

One issue was whether the observation occurred from a constitutionally protected area. The trial court's finding of fact that the officers did not trespass upon defendant's property was not clearly erroneous. Moreover, even if they were on or within the defendant's property line by the short distance claimed, it would constitute a "valid intrusion" under the circumstances. These included the fact that it appeared that the property beyond the fence belonged to the neighboring lot and the fact that defendant had not protected it from view in any manner whatsoever. As to "valid intrusion," see *State v. Zackery*, supra, and cases cited therein. Compare *Bunn v. State*, 153 Ga. App. 270 (265 SE2d 88) (1980).

The other issue with regard to the observation of the marijuana is whether deliberately looking for it, and seeing it, through narrow gaps between the fence boards was constitutionally permissible. "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' *Katz v. United States*, 389 U. S. 347, 360 (1967) (Harlan, J., concurring). *Katz* posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable? See *Smith v. Maryland*, 442 U. S. 735, 740 (1979)." *California v. Ciraolo*, 476 U. S. 207, 211 (106 SC 1809, 90 LE2d 210) (1986).

As to the first part of the inquiry, placing an eight-foot high slat fence around one's backyard would normally manifest a subjective expectation of privacy and did in this case. But, this did not cover *all* observations from *any* vantage point such as from the air or from someone perched in a tree looking over the fence. Defendant's expectation of privacy from observation through openings in the fence would not be a *reasonable* expectation. As restated in *Ciraolo*, supra at 212: " '(t)he test of legitimacy is not whether the individual chooses to conceal assertedly "private" activity,' but instead 'whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.' [Cit.]" Applying the reasoning followed in *Ciraolo*, the observation into Merriman's curtilage, which did not constitute any physical tampering with the fence or intrusion into or beyond it but merely a visual exercise, did not violate defendant's right to a reasonable expectation of privacy.

We take counsel in this analysis from the following cases. In *State v. Pontier*, 518 P2d 969, 974 (9-11) (Idaho 1974), deliberate police observation of marijuana plants over a waist-high picket fence was deemed constitutionally permissible. The court held "that objects falling in plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." In *United States v. McMillon*, 350 FSupp. 593 (D.D.C. 1972), officers standing on their tiptoes or a box looked from a neighboring porch over a six-foot high stake fence overgrown with vines and bushes. As found in Merriman's case, the officers at no time during the course of the observation physically intruded onto the defendant's yard or premises. The court concluded that no Fourth Amendment violation occurred. *George v. State*, 509 SW2d 347 (Ct. Crim. App. Tx. 1974), permitted admission of evidence obtained by the police in looking through cracks and knotholes in an eight-foot high privacy fence located 18 inches inside defendant's property line. See *Cox v. State*, 160 Ga. App. 199 (286 SE2d 482) (1981), for a case involving non-intrusive aural surveillance by the officers placing their ears close to an apartment door. The law does not require the conclusion that

defendant's Fourth Amendment rights were infringed by the positioning of the officers in order to observe the marijuana.

The observations by the officers gave them probable cause to believe a felony had been committed by the occupants of the property. The procedure then would be to obtain search and arrest warrants. This is especially true as to the marijuana field because two of the officers could have remained behind and determined if any effort was made to destroy or dispose of it, while the third officer obtained a warrant. However, because one of the deputies had seen someone watching them from the house, they determined that evidence contained in the house might be destroyed or concealed. The evidence was in dispute as to whether the person was or physically could have been seen. The trial court's finding in this regard is not clearly erroneous. *Dennis*, supra; *Johnson*, supra; *Medders*, supra. On this basis, they arrested defendant's wife when she said she lived there and they conducted a warrantless search of the house incident thereto.

An arrest or search which takes place in defendant's home without a warrant and without either exigent circumstances or his consent violates the Fourth Amendment. *Thompson v. State*, 248 Ga. 343 (1) (285 SE2d 685) (1981); *Steagald v. United States*, 451 U. S. 204, 211 (101 SC 1642, 68 LE2d 38) (1981); *Payton v. New York*, 445 U. S. 573, 585 (100 SC 1371, 63 LE2d 639) (1980). According to the testimony, any consent to a search occurred after the initial arrest and search. Without consent, the critical issue is whether there were exigent circumstances which would justify the warrantless arrest and search.

In exigent circumstances police officers are authorized, pursuant to a lawful arrest, to enter premises and conduct a search. *State v. Camp*, 175 Ga. App. 591, 594 (2) (333 SE2d 896) (1985). The court determined that a warrantless arrest was justified because under the circumstances, there were facts within their knowledge such as to warrant a prudent man to believe that the wife had committed or was committing an offense. See *Vaughn v. State*, 247 Ga. 136 (274 SE2d 479) (1981), applying *Beck v. Ohio*, 379 U. S. 89 (85 SC 223, 13 LE2d 142) (1964). The officers had probable cause to arrest, and exigent circumstances authorized it without a warrant.

The trial court also concluded that the officers reasonably believed that they were confronted with an emergency, in which the delay necessary to obtain search warrants threatened the destruction of the evidence. See *Schmerber v. California*, 384 U. S. 757, 770 (86 SC 1826, 16 LE2d 908) (1966).

After the lawful arrest, the search of the house for the purpose of securing it and preventing the destruction of evidence was permissible. *Strickland v. State*, 175 Ga. App. 224, 225 (1) (333 SE2d 140) (1985); *Camp*, supra at 594. Likewise the seizure of the contraband

found in plain view as a result was authorized. *State v. Lyons*, 167 Ga. App. 747, 749 (307 SE2d 285) (1983); *Horton*, supra. Cf. *State v. Scott*, 176 Ga. App. 887, 890 (339 SE2d 276) (1985).

The evidence authorized the factual findings of the trial court, *Hanvey v. State*, 186 Ga. App. 690, 691 (2) (368 SE2d 357) (1988), and it did not err in its application of federal constitutional law to those facts.

2. The second inquiry focuses on the marijuana itself. Defendant sought to have an independent examination of the alleged contraband under *Sabel v. State*, 248 Ga. 10, 16 (6) (282 SE2d 61) (1981), and *Patterson v. State*, 238 Ga. 204, 206 (232 SE2d 233) (1977). The trial court by order permitted two plants to be selected by the State and two by defendant to be sent to the State Crime Laboratory, and allowed defendant's expert to be present during the weighing and removal of the leaves from the marijuana plants and to independently analyze the marijuana at the lab.

Defendant contends that the order was error because the State failed to show the total weight of the marijuana was at least 50 pounds. See OCGA § 16-13-31 (c) (1). There was evidence that the marijuana weighed 400 pounds. Fifty pounds is the minimum weight for this offense. OCGA § 16-13-31 (c).

*Judgment affirmed. Judge Arnold Shulman concurs. Carley, P. J., concurs in Division 2 and in the judgment.*

DECIDED NOVEMBER 15, 1991.

*P. Samuel Huff*, for appellant.
*Garry T. Moss, District Attorney*, for appellee.