S95G1416. CARRANZA v. THE STATE.
(467 SE2d 315)

HUNSTEIN, Justice.

We granted Miguel Carranza's application for writ of certiorari to consider whether under the facts in this case, law enforcement officers were required to obtain a warrant before entering Carranza's home either to arrest him or to conduct a search. Because we find that in the absence of any exigent circumstances the officers were required to obtain a warrant, we reverse in part the Court of Appeals. *State v. Carranza,* 217 Ga. App. 431 (457 SE2d 699) (1995).

This case involves what is known as a "buy-bust" procedure. An undercover informant was sent by agents of the U. S. Immigration

---

and Naturalization Service and local law enforcement agencies to Carranza's home to arrange the purchase of fraudulent documents (e.g., social security and green cards). The informant wore a radio transmitter ("body bug") under his clothing so that the conversation in the home could be electronically monitored by officers outside the home. See OCGA § 16-11-66. The evidence established that the officers overheard a conversation in which the parties discussed how the documents were falsified, how falsified documents could be obtained from a source in California, and an agreement to obtain such documents for the informant. Pursuant to a pre-arranged verbal signal, the informant alerted the officers that the money for the falsified documents had been exchanged. Upon hearing that signal, the officers rushed to the door of Carranza's home, announced "ready," and, with weapons drawn, entered the home by opening the unlocked front door. It is uncontroverted that the officers acted without an arrest or search warrant. Carranza was arrested and falsified documents were found in his wallet. Carranza's 18-year-old wife, an illegal immigrant who spoke no English, led officers to other falsified documents. Carranza was subsequently taken to the police station where, after being read his *Miranda* rights, he made an incriminating statement.

At the hearing on Carranza's motion to suppress the documents and statement, INS Special Agent Craig Covert testified that entry into Carranza's home was made based solely upon the belief that officers had probable cause to believe a felony was taking place in the residence. Covert stated that he had information from a confidential informant two days before the arrest that falsified documents could be purchased at the home, although he was unaware of any previous purchases of falsified documents from the home.

1. The Fourth Amendment of the United States Constitution recognizes the right of the people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See also Art. I, Sec. I, Par. XIII of the Georgia Constitution (1983).

> It is axiomatic that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." [Cit.] And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. [Cit.]

*Welsh v. Wisconsin*, 466 U. S. 740, 748 (II) (104 SC 2091, 80 LE2d 732) (1984). The U. S. Supreme Court has thus held that even where probable cause exists, warrantless intrusion of a person's home is prohibited by the Fourth Amendment, absent consent or a showing of

exigent circumstances. *Steagald v. United States*, 451 U. S. 204, 211 (III) (101 SC 1642, 68 LE2d 38) (1981). To conclude otherwise would require "disregard[ing] the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." (Footnote omitted.) *Payton v. New York*, 445 U. S. 573, 601 (100 SC 1371, 63 LE2d 639) (1980).

The purpose of the warrant requirement in the Fourth Amendment is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search. *Steagald v. United States*, supra, 451 U. S. at 212.

> [T]he placement of this checkpoint between the Government and the citizen implicitly acknowledges that an "officer engaged in the often competitive enterprise of ferreting out crime," [cit.], may lack sufficient objectivity to weigh correctly the strength of the evidence supporting the contemplated action against the individual's interests in protecting his own liberty and the privacy of his home. [Cits.]

Id. See also *Illinois v. Gates*, 462 U. S. 213, 240 (103 SC 2317, 76 LE2d 527) (1983) (recognizing the "essential protection of the warrant requirement of the Fourth Amendment"). Accordingly, the U. S. Supreme Court has recognized that

> [a]bsent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.

*McDonald v. United States*, 335 U. S. 451, 455-456 (69 SC 191, 93 LE 153) (1948).

The Court of Appeals in this case reversed the trial court's grant of Carranza's motion to suppress on the basis of a provision in OCGA § 17-4-20 (a) authorizing a law enforcement officer to make an arrest without a warrant "if the offense is committed in his presence or within his immediate knowledge."[1] Because this statutory language encompasses personal knowledge obtained through senses other than

---

[1] OCGA § 17-4-20 (a) also authorizes warrantless arrests if the offender is endeavoring to escape; if the officer has probable cause to believe that an act of family violence has been committed; or "for other cause if there is likely to be failure of justice for want of a judicial officer to issue a warrant."

sight, see *Marsh v. State*, 182 Ga. App. 892, 893 (357 SE2d 325) (1987); see also *O'Keefe v. State*, 189 Ga. App. 519 (3) (376 SE2d 406) (1988), such that testimony by law enforcement officers regarding matters overheard due to electronic amplification constitutes direct, primary evidence, *Ferrell v. State*, 203 Ga. App. 479 (1) (416 SE2d 903) (1992); *Goodwin v. State*, 154 Ga. App. 46 (1) (a) (267 SE2d 488) (1980), the Court of Appeals concluded that Carranza committed a crime "in [the] presence or within [the] immediate knowledge" of the officers overhearing the conversation so as to authorize a warrantless arrest of Carranza in his home. OCGA § 17-4-20 (a).

Probable cause clearly exists where, as here, a crime is committed in the presence of law enforcement officers. See generally *Beck v. Ohio*, 379 U. S. 89 (85 SC 223, 13 LE2d 142) (1964); *Durden v. State*, 250 Ga. 325 (1) (297 SE2d 237) (1982). That does not, however, end the inquiry.

> It is elementary that probable cause, however well founded, can provide no justification for a warrantless intrusion of a person's home absent a showing "that the exigencies of the situation made that course imperative." *Coolidge v. New Hampshire*, 403 U. S. 443, 455 (91 SC 2022, 29 LE2d 564) [(1971), and cits.].

*Clare v. State*, 135 Ga. App. 281, 284 (217 SE2d 638) (1975). In this case, the record reflects there were no exigent circumstances present to authorize the officers' warrantless intrusion of Carranza's home. There was no pending danger of injury to any individual; the contraband purchased by the informant was not present in the home and thus was not in immediate danger of destruction; there was no evidence of flight, other than Agent Covert's unsubstantiated concern;[2] there was no testimony that individuals selling falsified documents engaged in similar behavior characteristic of persons in the narcotics traffic. See, e.g., *United States v. Richard*, 994 F2d 244, 248 (5th Cir. 1993). These facts present no compelling reason to justify the failure of law enforcement officers to place the matter before a detached and neutral judicial officer.

The offense in issue here, although committed in an officer's presence, was not committed *in public* but in the privacy of Carranza's own home. The State argues that the principle in *Payton v. New York* is not applicable here, because that case did not specifically address the situation before this Court, namely, whether probable cause alone is enough to authorize a law enforcement officer to make a war-

---

[2] There is no indication Carranza suspected law enforcement involvement in the sale or was aware that officers were in the area watching him or his home.

rantless arrest in an individual's home in those instances where the probable cause arises from the commission of the offense in the officer's presence, notwithstanding the absence of exigent circumstances.[3] However, we are not persuaded by the State's argument that the principle in *Payton v. New York* is not applicable to offenses occurring in the privacy of a home where no exigent circumstances exist merely because the offense is committed in an officer's presence.

An examination of appellate opinions in Georgia supports our conclusion. These cases implicitly recognize that even where the offense is committed in the officer's presence while in the privacy of the accused's home, the officer is required to obtain an arrest warrant absent consent or exigent circumstances. See, e.g., *Merriman v. State*, 201 Ga. App. 817 (1) (412 SE2d 598) (1991) (officers on adjacent property observed marijuana growing on Merriman's property. These observations gave officers probable cause to believe a felony had been committed and that "[t]he procedure then would be to obtain search and arrest warrants." Id. at 821. However, exigent circumstances thereafter arose when occupants spotted the officers so as to justify warrantless arrest); *Brock v. State*, 196 Ga. App. 605 (2) (396 SE2d 785) (1990) (Brock committed traffic violation in police officer's presence, then retreated toward his home; Court of Appeals held exigent circumstances were needed to justify a warrantless arrest but found they existed in view of officer's "hot pursuit" of Brock which had been initiated in a public place. Id. at 607). See also *United States v. Crespo*, 834 F2d 267 (2nd Cir. 1987) (offense of intimidating federal informant committed in presence of federal officers; exigent circumstances existed to justify warrantless arrest); *United States v. McGuire*, 608 F2d 1028 (5th Cir. 1979) (officers had personal knowledge of defendant's involvement in cocaine sale conspiracy; exigencies of situation "demanded and excused" warrantless arrest in motel room. Id. at 1034).

*Marsh*, supra, relied upon by the Court of Appeals, is not authority to the contrary. The warrantless arrest in that case was held to be justified based on a conversation officers heard over their informant's radio transmitter, which established the presence of cocaine in Marsh's motel room. The facts set forth in that opinion, however, clearly established the existence of exigent circumstances (i.e., Marsh was "in a hurry to leave and told [the informant] to hurry," and was

---

[3] The U. S. Supreme Court in *Payton v. New York* recognized the "ancient common-law rule" permitting a law enforcement officer to arrest without a warrant for a felony committed in his presence, id., 445 U. S. at 590, n. 30, and distinguished an officer's right to arrest for a crime committed in his presence when reviewing the common law on the question whether an officer had the authority to make warrantless arrests in the home on mere suspicion of a felony. *Payton v. New York*, 455 U. S., supra at 592.

returning to Miami at a given time, which left insufficient time to obtain a warrant).

After careful consideration of the critical safeguard of individual privacy represented by the Fourth Amendment and also by Art. I, Sec. I, Par. XIII of our State Constitution, and weighing that against the common-law rule codified by OCGA § 17-4-20 (a) and the consequences of this ruling on an important, effective law enforcement procedure, there is no question but that constitutional privacy considerations must prevail. Accordingly, we hold that where an individual commits an offense in his or her home and that offense is committed "in [the] presence or within [the] immediate knowledge" of a law enforcement officer, the officer is authorized to arrest the individual in the home without a warrant only where the officer's entry into the home is by consent or where there are exigent circumstances. Absent exigent circumstances or consent, a neutral judicial officer must be allowed to assess whether the police have probable cause to make an arrest in the home. Language contrary to our holding is hereby disapproved. See, e.g., *Marsh*, supra.

> The warrant requirement for an arrest in the home is imposed to protect the home, and anything incriminating law enforcement officers gain as a result of an illegal arrest taking place in the home should be excluded to deter such conduct.

*United States v. McCraw*, 920 F2d 224, 230 (4th Cir. 1990). A trial court's findings concerning the illegality of an arrest must be accepted unless clearly erroneous. *Mullis v. State*, 201 Ga. App. 75 (1) (410 SE2d 182) (1991). Because the trial court's ruling that the documents in issue were seized from Carranza's home as the result of an illegal arrest was not clearly erroneous, the Court of Appeals erred by reversing the trial court.

2. However, as to the statement Carranza made at the police station,[4] we find no error in the reversal of the trial court's ruling. The rule in *Payton v. New York* was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects, like Carranza, protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime. *New York v. Harris*, 495 U. S. 14, 17 (110 SC 1640, 109 LE2d 13) (1990) (declining to adopt per se rule that would render inadmissible any evidence that came to light through a chain of causation that began with an illegal arrest). We find this case indistin-

---

[4] The evidence established that all constitutional safeguards were met and defense counsel conceded that the statement was voluntarily made.

guishable from *New York v. Harris,* and conclude that the trial court erred by applying the rule in *Payton v. New York* to exclude from evidence Carranza's statement to police.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Fletcher, P. J., who concurs in Division 1 and in the judgment.*

DECIDED FEBRUARY 19, 1996.

*Dwight H. May, James M. Bivins,* for appellant.

*H. Lamar Cole, District Attorney, Charles M. Stines, Assistant District Attorney,* for appellee.

*Delong, Caldwell, Logue & Wisebram, Michael A. Caldwell, Steven R. Wisebram,* amicus curiae.