## A98A0728. CATES v. THE STATE.
### (501 SE2d 262)

BLACKBURN, Judge.

Tommy Edward Cates appeals the trial court's denial of his motion to suppress certain drug evidence seized from his apartment, contending that such evidence was illegally obtained without a warrant and in the absence of consent or exigent circumstances. For the reasons set forth below, we affirm the trial court's denial of Cates' motion.

In reviewing a trial court's denial of a motion to suppress, we are required to accept such court's ruling on disputed facts unless it is clearly erroneous. Additionally, we must defer to the trial court's judgment on the credibility of witnesses. *State v. Davis*, 261 Ga. 225, 226-227 (404 SE2d 100) (1991). Furthermore, "the evidence is to be construed most favorably to the upholding of the findings and judgment made." (Punctuation omitted.) *Dennis v. State*, 166 Ga. App. 715, 716 (305 SE2d 443) (1983).

Construed most favorably to the ruling of the trial court, the facts show that, on March 21, 1997, Investigator John Alley, a member of the Narcotics Division of the Douglas County Sheriff's Department, arrested Melvin Hunter. Hunter told Alley that he was en route to purchase marijuana from Cates and that Cates also sold methamphetamine.[1] Hunter then agreed to act as a confidential informant, and, in Alley's presence, Hunter phoned Cates and set up a buy for half an ounce of methamphetamine.[2] Hunter also informed Alley that Cates possessed weapons, that he was planning to go to Florida, and that Cates' supplier had recently dropped off a new shipment of drugs.

Hunter was then escorted to Cates' apartment by Alley and three other narcotics officers, Phillips, Oliver, and Dingee. Hunter entered Cates' apartment with marked money to purchase the drugs and a microphone concealed beneath his clothing, which allowed Phillips to hear what was going on inside. The narcotics officers, who were dressed in plain clothes, waited outside the apartment while the buy took place.

As he listened to his radio receiver, Phillips heard the following: (1) Hunter moving through the apartment into Cates' bedroom; (2) Hunter asking Cates when he would be returning from Florida, although the answer to the question was obscured by static; (3) Cates asking Hunter how much money he was carrying; (4) Cates measuring and preparing the methamphetamine being sold; (5) Hunter counting the money for the purchase; (6) Cates telling Hunter to hurry; (7) other voices in the room, including the voice of a child; (8) Cates chastising his child; and (9) Cates asking Hunter to look out the window to see who was there. Based on the content and cadence of Cates' speech, Phillips believed that Cates was becoming nervous as the drug buy progressed.

At that point, the blinds were moved, and Phillips and Alley saw someone looking out the window at them. Neither officer could identify who looked at them, and they believed that they had been seen

---

[1] At that point, Hunter knew Cates only as "T."

[2] Hunter's telephone conversations with Cates were taped, and Alley listened to them after the call was completed.

by the perpetrators, thereby alerting Cates that he had been set up. The officers then entered Cates' apartment without a warrant,[3] believing that Hunter was in danger, that children within the apartment might be placed in danger, that Cates and others might attempt to destroy or conceal evidence, and that Cates might attempt to flee to Florida.

The Supreme Court of the United States has held that, even where probable cause exists, intrusion of a person's home without a warrant is prohibited by the Fourth Amendment unless such intrusion is preceded by consent or exigent circumstances. *Steagald v. United States*, 451 U. S. 204, 211 (III) (101 SC 1642, 68 LE2d 38) (1981). Whether exigent circumstances were present in a given situation is a question of fact, and, "[a]lthough we review police actions from the standpoint of a hypothetical reasonable officer, we must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit." (Punctuation omitted.) *State v. Brannan*, 222 Ga. App. 372, 373 (1) (474 SE2d 267) (1996). See also *State v. David*, 225 Ga. App. 541, 543 (484 SE2d 278) (1997).

Deferring to the trial court's determinations with regard to facts and credibility, as we must, we cannot say that the denial of Cates' motion to suppress was clearly erroneous. *Davis*, supra. There was evidence that the officers believed that the "buy and bust" set up by them had gone sour, specifically that they had been seen by the perpetrators and that Cates had grown nervous about the situation. Combined with the information that Cates possessed weapons, the officers reasonably believed that the informant was in danger inside the apartment. Furthermore, the officers reasonably believed that Cates might attempt to destroy evidence. See *Merriman v. State*, 201 Ga. App. 817 (412 SE2d 598) (1991).

Contrary to Cates' argument, *Carranza v. State*, 266 Ga. 263 (467 SE2d 315) (1996), does not require a different outcome in this case. In *Carranza*, our Supreme Court held "that where an individual commits an offense in his or her home and that offense is committed in the presence or within the immediate knowledge of a law enforcement officer, the officer is authorized to arrest the individual in the home without a warrant only where the officer's entry into the home is by consent or where there are exigent circumstances." (Punctuation omitted.) Id. at 268 (1). As exigent circumstances were present in the matter at hand, the outcome herein complies with the holding in *Carranza*.

---

[3] Search warrants were obtained *subsequent* to the warrantless entry.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED APRIL 2, 1998 —
RECONSIDERATION DENIED APRIL 15, 1998 —

*Winn, Price & Winn, Frank C. Winn*, for appellant.
*David McDade, District Attorney, Stephen L. Corso, Assistant District Attorney*, for appellee.