**Bryan HOUSTON and Stephanie R. Porter, Plaintiffs,**

v.

**Orville M. TUCKER, Jr. a/k/a Skip Tucker, Defendants.**

**No. Civ.A. 1:98CV1725CAP.**

United States District Court, N.D. Georgia, Atlanta Division.

June 1, 2000.

Clifford Harold Hardwick, Office of Clifford H. Hardwick, Roswell, GA, for Plaintiffs.

Richard A. Carothers, Carothers & Mitchell, John Harold Zwald, Carothers & Mitchell, Buford, GA, for Defendants.

## ORDER

PANNEL, District Judge.

The plaintiffs filed the instant suit under 42 U.S.C. § 1983, alleging that the defendant, in his individual capacity, violated their rights under the Fourth and Fourteenth Amendments. This matter is currently before the court on the defendant's motion for summary judgment. In analyzing a summary judgment motion, the court resolves all issues of fact in favor of the non-movant, here, the plaintiffs. *See Cottrell v. Caldwell,* 85 F.3d 1480 (11th Cir. 1996). Accordingly, the court states the facts of the case in the light most favorable to the plaintiffs.

## I. *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

One of the plaintiffs, Bryan Houston, is employed as a marshal in the Roswell Municipal Court. Prior to this assignment, Officer Houston was a police officer with the Roswell Police Department. The other plaintiff, Stephanie Porter, was engaged to and cohabited with Officer Houston at the time of the incident giving rise to this action. They are now married. At all relevant times, the defendant was a detective with the Roswell Police Department.

Officer Houston and the defendant knew each other prior to the incident.

On the afternoon of November 10, 1997, Ms. Porter's mother, Sue Rosenkrans, telephoned Ms. Porter at work to tell her that her niece and nephew had run away from home because their mother had beaten them. The children had hitchhiked to Ms. Porter's home, where Mrs. Rosenkrans was taking care of Ms. Porter's children. Ms. Porter called Officer Houston to ask him what she should do. Officer Houston told her that he was going to talk to the police. He called Sergeant Jack Bradshaw of the Roswell Police Department to advise him of the situation, explaining that the children had run away because they had been "beaten," but were now "fine." Sergeant Bradshaw informed Officer Houston that no reports of the children had been received and ended the conversation. Later, Sergeant Bradshaw called Officer Houston and told him that a "phone call had been received" about the children, and he was sending Roswell police detectives to check on the children. Officer Houston informed Sergeant Bradshaw of Ms. Porter's address and phone number. He then called and explained to Ms. Porter that the police were on their way to investigate.

Sometime late that morning, Detectives Tammy Dallape and Orville Tucker (the "defendant"), arrived at Ms. Porter's home, rang the door bell and knocked on the door. Although Mrs. Rosenkrans, Ms. Porter's children and the runaway children were in the house, none of them answered the door. Mrs. Rosenkrans contends that she did not answer because she was unaware that the police were outside. The detectives returned to the station to contact someone inside the house to let them check on the children. Meanwhile, the plaintiffs returned home from work, took Ms. Porter's children to various activities

and returned that evening. Upon his return, Officer Houston went to his private living quarters in the lower portion of the house and began lifting weights and watching television. He contends that he was unaware of any of the foregoing events until Mrs. Rosenkrans called him to come upstairs.

Later that evening, Detective Dallape called the house, and Ms. Porter answered. Detective Dallape identified herself, told Ms. Porter about the reported child abuse and explained that she was investigating the situation. Ms. Porter contends that she explained that the children were her nephew and niece and that they were fine. Further, she told Detective Dallape that the children's parents were in the middle of a divorce and that she was attempting to contact their guardian ad litem. The defendant contends that Ms. Porter responded that she didn't know what Ms. Dallape was talking about, that there was no child abuse, and then hung up the phone. Ms. Porter counters that she terminated the conversation because she felt that Detective Dallape was impolite. Regardless of the substance of that conversation, shortly thereafter, Detective Dallape called Ms. Porter back. A verbal altercation ensued and Ms. Porter again hung up on Detective Dallape. Throughout the evening, Ms. Porter continued to try and contact the children's appointed guardian ad litem.

Next, the Detectives asked Patrolman Steve Bailey, a uniformed officer, to meet them at Ms. Porter's house. None of the officers made any effort to obtain a warrant to enter Ms. Porter's home. Upon arrival, the defendant went to the door to interview the children. At some point the defendant asked the police dispatcher to call the residence to let them know that the police were outside. The dispatcher reported that a female answered the phone and then hung up.

Eventually, the defendant spoke to Ms. Porter through her screen door and explained that he had to check on the runaway, and reportedly abused, children. Ms. Porter refused to allow him to enter her house, asking him whether he could guarantee that he wouldn't turn the children over to the Georgia Department of Family and Children Services ("DFACS"). The defendant explained that because he didn't know the children's condition he could not make such guarantees. Similar to her earlier conversations with Detective Dallape, Ms. Porter explained that the children's parents were in the middle of a divorce and a guardian ad litem had been appointed for the children. Further, Ms. Porter explained that she was currently trying to contact the guardian ad litem to find out whether to let the police see the children. At that point, Mrs. Rosenkrans asked Officer Houston to come upstairs. Ms. Porter informed Officer Houston that the police were at the door. Ms. Porter and Officer Houston exited the house and onto the porch. Ms. Porter refused to allow the police inside by blocking the door. Officer Houston went over to talk to Detective Dallape to discuss the situation. According to the plaintiffs, the defendant then struck Ms. Porter, grabbed her shoulders, and threw her against the wall of the house, knocking several items off the wall and onto the porch. Conversely, the defendant contends that although he grabbed Ms. Porter, he merely tried to mover her out of his way in order to get into the house and ascertain the children's condition. Still, he did not enter the house. Within the next few minutes, Ms. Porter finally reached the guardian ad litem. Ms. Porter convinced the defendant to speak to the guardian ad litem, who instructed Ms. Porter to allow the police into the house. The Detectives entered the house, checked on the children, and although they discovered some bruises, determined that the

children had not been abused. The children's parents and the guardian ad litem arrived, and, at some point, the guardian ad litem took the children away. The detectives and officer Bailey then left the premises.

On November 17, 1997, the defendant obtained three warrants, signed by Judge Hilliard of the Roswell Municipal Court, charging the plaintiffs and Mrs. Rosenkrans with misdemeanor obstruction of a police officer, under O.C.G.A. § 16–10–24. The day after issuing the warrants, Judge Hilliard contacted the defendant and directed him not to arrest Officer Houston, but only cite him with a general citation or "G" ticket. On December 2, 1997, the defendant arrested the plaintiffs and Mrs. Rosenkrans. They were all booked and then released on bond. On December 22, 1997, the charges against Officer Houston were dismissed. On April 1, 1998, a preliminary hearing was held, and Ms. Porter, on the advice of her attorney, pled nolo contendere to a charge of Disorderly Conduct and was fined $250.00.[1]

## II. *LEGAL DISCUSSION*

The defendant has moved for summary judgment, arguing that (1) he has qualified immunity, (2) the criminal charges against Ms. Porter did not terminate in her favor, and (3) actual or arguable probable cause existed for the charges against the plaintiffs. Conversely, the plaintiffs contend that the arrest warrants taken by the defendant and their subsequent arrest were in retaliation for their actions on November 10, 1997, when Ms. Porter arguably exercised her Fourth Amendment right not to allow unlawful and warrant-less entry by the defendant into her home. The

plaintiffs further assert that the arrests were malicious in nature.

## A. *LEGAL STANDARD FOR SUMMARY JUDGMENT*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress Co.,* 398. U.S. 144, 156, 398 U.S. 144, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *See also Bingham, Ltd. v. United States,* 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged merely by " 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright,* 718 F.2d 1538, 1543 (11th Cir.1983). Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

---

1. A nolo contendere plea is similar to a demurrer to a criminal indictment. It admits all facts stated in the indictment for the purposes of a particular case but it cannot be used as an admission in another case. The plea of nolo contendere is equivalent to a plea of guilt for the purposes of a criminal matter. *See* Fed.R.Crim.Proc. 11(b).

In deciding a motion for summary judgment, it is not the court's function to decide genuine issues of material fact but to decide only whether there is such an issue to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *See Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510.

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See id.* In order for factual issues to be "genuine" they must have a real basis in the record. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' *Id.* (citations omitted).

## B. *QUALIFIED IMMUNITY UNDER SECTION* 1983

■■■ Government actors may be sued under Section 1983 in either their official or individual capacity. When sued in an individual capacity, as here, an official may enjoy qualified immunity from suit in certain situations. *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146 (11th Cir.1994) (en banc); *see also Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (discussing qualified immunity in Fourth Amendment excessive force claims). As a general matter, even though the actions of public officials may have violated a plaintiff's constitutional rights, qualified immunity shields public officers

from personal liability if those constitutional acts "did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

■■■ To determine the Propriety of qualified immunity, the officials' conduct is evaluated under an objective standard. *See Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038. The official's subjective intent is irrelevant to the inquiry. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); *Hutton v. Strickland,* 919 F.2d 1531, 1540 (11th Cir. 1990) ("the purpose of qualified immunity would be defeated if courts were to ascertain and analyze the subjective thoughts of government officials instead of basing judicial decisions on objective actions resulting from surrounding circumstances."). Conversely, under the objectively reasonable standard, a government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir.1992). "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Lassiter,* 28 F.3d at 1150.

■■■ As long as their conduct is not unlawful, the doctrine of qualified immunity exempts public officials from damage suits in order to enable them to perform their duties without the threat of potential liability. *See Hutton,* 919 F.2d at 1536(citations omitted). Qualified immunity is intended to protect "all but the plainly in-

competent or those who knowingly violate the law." *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir.1995). Thus, a government official's entitlement to immunity is the rule, rather than the exception. *See Lassiter*, 28 F.3d at 1149 ("Only in exceptional cases will government actors have no shield against claims made against them in their individual capacities.").

██ The Eleventh Circuit applies a two-part analysis to determine the propriety of granting qualified immunity. First, the defendant must prove that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred. *See Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995). If successfully met, the burden then shifts to the plaintiff to show that the defendant objectively violated clearly established law. *See id.* This subsequent burden can only be satisfied by demonstrating that the contours of the plaintiff's rights were so sufficiently clear that a reasonable government officer would have understood that his actions were constitutionally repugnant. *See Swint v. City of Wadley*, 51 F.3d 988, 995 (11th Cir.1995).

The plaintiffs have not disputed and the defendant has averred that at all relevant times he was acting within his discretionary authority as a police officer investigating a crime. Accordingly, the court finds that the alleged constitutional deprivations were carried out by the defendant as a state actor. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). Further, the court finds that the defendant for purposes of this Section 1983 action was carrying out his police duties pursuant to authority conferred upon him by the state. *See West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 2255–56, 101 L.Ed.2d 40 (1988). Thus, the court holds that the defendant was acting under color of state law and within the discretionary authority granted to him un-der state law, when he tried to enter Ms. Porter's home and arrested both plaintiffs. Consequentially, the defendant is subject to Section 1983 liability only if the plaintiffs can prove that he violated a clearly established law or right from the point of view of an objective officer.

█ In doing so, the plaintiffs cannot discharge their burden of showing that a right is clearly established by referring to general rules and abstract rights in order to strip the defendant of his qualified immunity. *See Jones v. Cannon*, 174 F.3d 1271, 1282–83 (11th Cir.1999) (quoting *Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir.1997)), reh'g and suggestion for reh'g en banc denied, 124 F.3d 223 (11th Cir.1997), cert. denied, 523 U.S. 1117, 118 S.Ct. 1794, 140 L.Ed.2d 935 (1998). Instead, "qualified immunity focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at 1132 (citing *Lassiter*, 28 F.3d at 1149). Thus, the plaintiffs must point to their specific rights that the defendant violated to sustain their excessive force and false arrest claims.

## C. SUBSTANTIATING VIOLATIONS OF CLEARLY ESTABLISHED LAW

█ Having established that the defendant was acting within the scope of his discretionary authority as a state actor, the burden shifted to the plaintiffs to demonstrate that the defendant violated clearly established law. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992). To overcome qualified immunity, the plaintiffs must show that: (1) the defendant violated a federal constitutional right; and (2) the right was clearly established at the time of the violation. *See Santamorena v. Georgia Military College*, 147 F.3d 1337, 1342 (11th Cir.1998) (citations omitted).

█ For the right to be clearly established, "[t]he contours of the right must be

sufficiently clear [so] that a reasonable official would understand that what he was doing violates that right." *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039. In other words, the plaintiffs must show that when he allegedly used excessive force and falsely arrested them, the law was developed in such a concrete and factually defined context to make it obvious to all reasonable officers, in the defendant's place, that what he was doing violated federal law. *See Braddy v. Florida Dep't. of Labor & Employment Security,* 133 F.3d 797, 801 (11th Cir.1998) (quoting *Jones v. City of Dothan,* 121 F.3d 1456, 1459 (11th Cir.1997)). To determine whether the plaintiffs have met their burden, the court must find that the applicable law was clearly established at the time the challenged action occurred, and whether a genuine issue of fact exists regarding the defendant's engaging in the allegedly violative conduct. *See Hutton,* 919 F.2d at 1538. Only if it can be determined that "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of [the defendant's] conduct under the circumstances, summary judgment [for the defendant] is appropriate." *Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1378 (11th Cir.1997) (citation omitted).

Under the circumstances presented in the instant action, to satisfy their burden and create a triable issue, the plaintiffs must identify factual scenarios in preexisting law which demonstrate that the defendant's actions were illegal. *See Jones,* 121 F.3d at 1459. This factual judgment must be made from the perspective of a reasonable officer at the scene. *See Graham,* 490 U.S. at 396, 109 S.Ct. at 1871–72.

### D. *PORTER'S CLAIMS*

1. *The Fourth Amendment and Excessive Force*

▮ The Fourth Amendment prohibits government officials from using ex-

cessive force in carrying out their duties, whether it be an arrest, investigatory stop, or other "seizure" of a free citizen. *See Graham,* 490 U.S. at 396, 109 S.Ct. at 1865. In applying its excessive force analysis, the court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Further, in analyzing the facts in the light most favorable to the plaintiff, the court notes that "not every push or shove ... violates the Fourth Amendment." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871–72.

▮ One of the specific factors to be considered in a Fourth Amendment reasonableness inquiry is the extent of the intrusion; thus reasonableness necessarily implicates both when a seizure is made and how it is carried out. *See id.* Additional specific factors in the reasonableness inquiry include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *See Graham,* 490 U.S. at 396, 109 S.Ct. at 1865. The Supreme Court has held that the reasonableness inquiry must be undertaken from the perspective of a reasonable officer on the scene under the same conditions, rather than in hindsight, as the former allows for proper appreciation of the fact that police officers are forced to make their decisions about how much force to use in situations that are tense, uncertain, and rapidly evolving. *See id.* Lastly, the court recognizes that the reasonableness inquiry of the Fourth Amendment is an objective standard—whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him at the

scene, without regard to his underlying intent or motivation. *See id.*

■■■■ Ms. Porter contends that the defendant used excessive force and violated her Fourth Amendment rights by attempting to enter her home and investigate the alleged child abuse. *See Thornton v. City of Macon,* 132 F.3d 1395, 1400 (11th Cir.1998). While attempting to contact the guardian ad litem, she asserts that the defendant "attacked" her. Further, Ms. Porter argues that the defendant was not lawfully discharging his duties, because she had "an absolute right to deny (the) Defendant entry into her home." *See* Porter Affidavit. Accordingly, Ms. Porter argues that her Fourth Amendment guarantee of warrantless and non-consensual entry into her home, absent exigent circumstances, was violated by the defendant. *See* U.S. Const. amend. IV.[2] Accordingly, she contends that the defendant was not properly discharging his duties when he allegedly assaulted her. Thus, Ms. Porter argues that the defendant's excessive force, lack of probable cause and attempted warrantless entrance of her home deprives the defendant of qualified immunity as to her excessive force claims.

In response the defendant admits that he had an opportunity to obtain a warrant and acknowledges that he had been told that the children were no longer in danger. The defendant, however, as a police officer investigating a crime cannot properly discharge his duties by simply accepting the assurances from the victims' fami-

ly members that they are fine. The Fourth Amendment does not require law enforcement officers to disregard their own reasonable judgments and trust the statements of unofficial parties who might have biases or ulterior motives. Rather, the defendant had an affirmative duty to physically ensure that the children were no longer in danger and to investigate whether the alleged child abuse had taken place. Although Ms. Porter argues that she did not physically attempt to stop the defendant from entering her house, she effectively prevented the defendant from entering her house by orally denying him entrance and by refusing to cooperate with an officer of the law carrying out a lawful investigation of reported child abuse.

■■■ In light of these facts the key issue in determining if the defendant violated Ms. Porter's Fourth Amendment rights by using excessive force is whether the defendant had arguable probable cause to attempt to enter the house by force to ascertain the children's condition. *See Gold,* 121 F.3d at 1445 (citing *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir. 1990)). Arguable probable cause, which is distinguishable from actual probable cause, is found where a reasonable officer "could have believed that probable cause existed." *Moore v. Gwinnett County,* 967 F.2d 1495, 1497 (11th Cir.1992). Here, the defendant, although investigating what had been reported as an already completed crime, was lawfully and reasonably discharging his duties by investigating the crime and en-

---

**2.** The Fourth Amendment requires that a "neutral judicial officer ... assess whether the police have probable cause to make an arrest or conduct a search ... [A]bsent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was not done to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals." (Citations omitted.). *State v. Sims,* 240 Ga.App. 391, 523 S.E.2d 619 (1999) (quoting *Carranza v. State,* 266 Ga. 263, 265, 467 S.E.2d 315 (1996)).

suring the children's safety. *See id.; and see Gold,* 121 F.3d at 1442.

■ Upon considering all of the above factors, as well as the arguments forwarded by the plaintiff, the court concludes that, under the circumstances, the defendant had to ascertain the children's condition and the force he used in doing so was not excessive, under the de minimis force doctrine. *See generally Thornton,* 132 F.3d at 1400; *Gold,* 121 F.3d at 1442. Simply, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell,* 207 F.3d 1253, 1257 (11th Cir.2000); *see generally Thornton,* 132 F.3d at 1400; *Gold,* 121 F.3d at 1442; *Jones,* 121 F.3d at 1456. Accordingly, the defendant is entitled to qualified immunity as to Ms. Porter's claim of excessive force.

### 2. *The Fourth Amendment and False Arrest Claim*

■ As previously stated, the Fourth Amendment prohibits the government from arresting a citizen without probable cause. It is well-established that a police officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, or committing, or is about to commit an offense. *See Von Stein,* 904 F.2d at 578.

■ To enjoy qualified immunity from Section 1983 liability based upon an unlawful arrest claim the defendant need not prove that he had probable cause to arrest the plaintiffs. *See Jones,* 174 F.3d at 1283. Rather, the defendant is shielded from liability upon evidence that he had arguable probable cause to make the arrest. *See id.* This lower standard of arguable probable cause is satisfied "if a reasonable officer,

knowing what [the defendant] knew, could have believed that there was probable cause for the [ ] arrest." *Id.* (citing *Gold,* 121 F.3d at 1445). Thus, to avoid trial, the undisputed evidence in the record must show that a reasonable officer could have believed that the Ms. Porter's arrest was lawful, in light of clearly established law and the information possessed by the defendant at the time of the arrest. *See Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

■ At the time of the defendant's actions, the law was clearly established that an arrest, without at least arguable probable cause, violates the arrestee's Fourth and Fourteenth Amendment rights. *See Bailey v. Board of County Comm'rs of Alachua County,* 956 F.2d 1112, 1119 (11th Cir.1992). What constitutes probable cause to arrest, however, is the information known to the defendant at the time of the arrest and not the facts "known to the plaintiff[s] then or those known to a court later." *Jones,* 174 F.3d at 1283 n. 4 (quoting *Hunter,* 502 U.S. at 227, 112 S.Ct. at 536).

■ The plaintiffs were arrested for "knowingly and willfully obstruct[ing] ... a law enforcement officer in the lawful discharge of his official duties." O.C.G.A. § 16–10–24 (1999). An essential element of the offense is that the officer must be engaged in the lawful discharge of his official duties. *See Dixon v. State,* 154 Ga.App. 828, 269 S.E.2d 909 (1980). The court recognizes that when officers forcibly try to resolve disputes, while not engaged in the lawful discharge of their official duties, they lack probable cause to arrest for obstruction of their unauthorized actions. *See Thornton,* 132 F.3d at 1395 (discussing civil disputes).

■ To this end, Ms. Porter argues that because the defendant was not lawful-

ly discharging his duties, he violated her Fourth Amendment rights when he falsely arrested her. To this end, she contends that she was "justifiably" concerned that the defendant was going to turn the children over to DFACS, and that she was arrested because she refused a warrantless entry into her home. She argues that she intended to refuse him entry to her house and, by implication, access to the children only until she "could contact the guardian ad litem and get directions." *See* Porter Affidavit. Conversely, the defendant contends that he executed a validly issued warrant for her arrest based on the information he relayed to the issuing judge. Further, and more importantly, the defendant points out that the defendant pled nolo contendere to the charge of disorderly conduct, associated with her denying the defendant entrance to her home.[3] Although after viewing the facts in the light most favorable to the plaintiff the court concludes that a reasonable officer could have believed that the defendant had probable cause to arrest Ms. Porter, the court need not address whether the defendant falsely arrested Ms. Porter, because in order to proceed on her false arrest claim Ms. Porter must show that she had a favorable outcome on her criminal charge. *See Uboh v. Reno*, 141 F.3d 1000, 1004-5 (11th Cir.1998). A plea of nolo contendere is not a favorable outcome. *See Yarbrough v. SAS Systems, Inc.*, 204 Ga.App. 428, 419 S.E.2d 507 (Ga.App.1992). Accordingly, the defendant is entitled to summary judgment as to Ms. Porter's claim of false arrest.

### E. *OFFICER HOUSTON*

 Conversely, the charges against Officer Houston terminated in his favor. *See Uboh*, 141 F.3d at 1005. To this end, he argues that the only basis for arresting him was that he was at Ms. Porter's house. To have violated O.C.G.A. § 16-10-24, Officer Houston had to have obstructed or hindered the defendant's exercise of his lawful duties. The record is devoid of any facts that indicate Officer Houston in any way hindered or obstructed the defendant. The defendant argues that Officer Houston is a police officer and should have helped him. Officer Houston, however, despite his duty to aid a fellow officer, has no duty to aid a fellow police officer in carrying-out what he believes is an illegal entry into a private home, nor help him complete what he considers an assault on a private citizen. Further, Judge Hilliard instructed the defendant not to arrest Officer Houston and merely issue him a general citation. The defendant was well aware that he was not authorized to arrest Officer Houston for obstruction, but still did so. Because the defendant knew he was not authorized to arrest Officer Houston, there is a disputed issue of fact as to whether he knew that he lacked probable cause. The Fourth and Fourteenth Amendments were designed, in part, to prevent such abuses of power by government officers. Even if the court concludes that Officer Houston obstructed or hindered the defendant in some fashion, he is not entitled to qualified immunity because no reasonable officer would have believed that his actions were "in the lawful discharge of his official duties." O.C.G.A. § 16-10-24; *Thornton*, 132 F.3d at 1398 (citing *Duncan v. State*, 163 Ga. App. 148, 148, 294 S.E.2d 365, 365 (1982)). Further, the court finds that a genuine issue of material fact exists as to whether

---

**3.** Although Ms. Porter contends that she was pressured to enter her plea of nolo contendere, the court notes that the plaintiff was represented at her criminal hearing by counsel. She has not challenged her plea by claiming ineffective assistance of counsel. In fact, the record is devoid of any indication that Ms. Porter has attempted in any way to challenge or otherwise set-aside her plea.

a reasonable officer would have believed the challenged action was lawful, in light of clearly established law. Accordingly, summary judgment on Officer Houston's claim of false arrest is inappropriate.

## III. *CONCLUSION*

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the defendant's motion for summary judgment [Doc. No. 17–1]. Specifically, the defendant is entitled to summary judgment as to Ms. Porter's claims, but not so entitled as to Officer Houston's claim of false arrest.